**GREATER BATON ROUGE GOLF ASSOCIATION**

v.

**RECREATION & PARK COMMISSION FOR the PARISH OF EAST BATON ROUGE et al.**

**Civ. A. No. 74–149.**

United States District Court,
M. D. Louisiana.

April 17, 1975.

---

21. This opinion constitutes my findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52(a).

Richard B. Nevils, Kleinpeter & Nevils, Baton Rouge, La., for plaintiff.

David M. Miller, Asst. Dist. Atty., Baton Rouge, La., for defendants.

E. GORDON WEST, District Judge:

This suit arises out of the refusal of the defendant, Recreation and Park Commission for the Parish of East Baton Rouge, Louisiana, and the other named defendants, to permit the plaintiff, the Greater Baton Rouge Golf Association, to use, as a group, a municipal golf course for holding a golf tournament in Baton Rouge, Louisiana. The parties hereto have submitted the case on the following Stipulation of Facts.

## "STIPULATION OF FACTS"

"(a) It is stipulated that The Greater Baton Rouge Golf Association, hereinafter referred to as the 'GBRGA', is a non-profit domestic corporation authorized under the laws of the State of Louisiana.

"(b) It is stipulated that the Recreation and Park Commission for the Parish of East Baton Rouge, herinafter referred to as 'BREC', is a political subdivision of the State of Louisiana and as such owns and operates the five (5) municipal golf courses present in the Parish of East Baton Rouge.

"(c) It is stipulated that BREC is governed by a commission of nine (9) members and the rules and procedures established by the commission are implemented by Eugene Young the BREC Superintendent.

"(d) It is stipulated that in The Articles of Incorporation of The Greater Baton Rouge Golf Association under Article 1, Section 1 that 'membership in this organization is open to any male golfer of the caucasian race . . . . . .' thereby excluding all golfers not of the caucasian race.

"(e) It is stipulated that Ossie B. Brown, the District Attorney for the Parish of East Baton Rouge, and the legal advisor for BREC on May 28, 1974 advised BREC that the GBRGA could not use any BREC facilities as a group because of the 'caucasian only' clause in the group's Articles of Incorporation.

"(f) It is stipulated that since the above opinion by Ossie B. Brown, BREC has refused to allow the GBRGA to use any of its facilities as a group.

"(g) It is stipulated that when the GBRGA applies to BREC to use a golf course for the purpose of holding a tournament that the only benefit if any afforded the GBRGA members is the designation of particular times to tee off the number one tee between the regular hours of operation of the golf course used.

"(h) It is stipulated that at the time the GBRGA is using the number one tee for the purposes of starting its tournaments that non-members are not denied access to the other holes on the course, and in fact they can tee off on the back nine at the same time as the tournament is being started on the number one tee.

"(i) It is stipulated that at no time does the GBRGA ever have a total use of the BREC public facility involved so as to exclude non-members from using the facility at the same time although the non-members might be required to tee off the back nine first rather than starting on the number one tee.

"(j) It is stipulated that the assigned tee times granted the GBRGA are continuous and the GBRGA is required to tee off its entire tournament within the time allotted. Never has a GBRGA tournament been granted more than four (4) hours of designated tee times within one day.

"(k) It is stipulated that no additional benefit is granted to the GBRGA members by any State agency or subdivision, and any tournaments which are held by the GBRGA on public golf courses operated by BREC requires the members of the Association to pay the standard admission price or greens' fee charged to any citizen or non-member.

"(l) It is stipulated that the GBRGA sponsors six (6) separate tournaments annually and that of the six tournaments, three (3) are open to all golfing members of the Baton Rouge area regardless of whether they are a member of the Association or not. The tournaments open to all players whether members or not are as follows:

"(1) GBRGA Open Championship

"(2) GBRGA Junior Championship

"(3) GBRGA Father-Son Championship

"(m) It is stipulated that the GBRGA tournaments restricted to members only are as follows:

"(1) GBRGA Four Ball Championship

"(2) GBRGA Seniors Championship

"(3) GBRGA Members Championship

"WE FURTHER CERTIFY to the Court that the above and foregoing Stipulation of Facts has been duly read by counsel on this the 24th day of March, 1975 and submitted to the Court for a decision in the case.

"Respectfully submitted:

"By: /s/ Richard B. Nevils
Richard B. Nevils
Kleinpeter & Nevils
Post Office Box 66443
Baton Rouge, Louisiana 70806
Attorneys for the Greater
Baton Rouge Golf Association

"By: /s/ David M. Miller
Assistant District Attorney
District Attorney's Office for
the Parish of East Baton Rouge
Attorneys for Defendants"

Since the filing of this suit, the United States Supreme Court has handed down its decision in Gilmore v. City of Montgomery, Alabama, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974), and the decision in the instant case must be governed by the principles contained therein. While *Gilmore* speaks only in generalities, and leaves the "sifting [of] facts and weighing [of] circumstances [on a case-by-case basis]" to the District Courts, it does, nevertheless, enunciate principles which must be controlling here. The Court stated that:

" . . . the question of the existence of state action centers in the extent of the city's involvement in discriminatory actions by private agencies using public facilities, and in whether that involvement makes the city 'a joint participant in the challenged activity, which, on that ac-

count, cannot be considered to have been so "purely private" as to fall without the scope of the Fourteenth Amendment.' . . . The question then is whether there is significant state involvement in the private discrimination alleged." at 573, 94 S.Ct. at 2426, 2427.

And:

"It should be obvious that the exclusion of any person or group—all Negro, all-oriental, or all-white—from public facilities infringes upon the freedom of the individual to associate as he chooses. '. . . 'The associational rights which our system honors permit all white, all black, all brown, and all yellow clubs to be formed. They also permit all Catholic, all Jewish, or all agnostic clubs to be established. Government may not tell a man or woman who his or her associates must be. The individual can be as selective, as he desires.' " at 575, 94 S.Ct. at 2427.

These are the principles that must govern the present controversy.

■■■ The stipulation of fact upon which this case must be judged makes it quite clear that whatever state involvement is present here is minimal. Under the principles established by *Gilmore,* there is no question but that the defendants would not have the right to deprive the individual members of the plaintiff Golf Association of the right to use the public golf course simply because they belonged to an organization with a "white only" clause in its membership requirements. The only question presented is whether or not it can deny the group as a whole the right to use those public facilities. The answer to this, according to *Gilmore,* must be based upon a "sifting [of] facts and weighing [of] circumstances" to see " 'whether the State . . . has become significantly involved in private discriminations' so as to constitute state action."

We hold in this case that it has not.

In permitting the plaintiff to hold its tournament on the public golf course, the defendants would in no way be granting "exclusive use" of the public facility to this private organization. It would simply be permitting the members of the plaintiff Golf Association to play golf on a public course. As stated in *Gilmore:*

"Certainly, a person's mere membership in an organization which possesses a discriminatory admissions policy would not alone be ground for his exclusion from public facilities." at 575, 94 S.Ct. at 2427.

But it is suggested that there is a difference between permitting the individual members of the plaintiff Golf Association to use public facilities and permitting the Association as a group to use those facilities to hold a tournament from which members of the Negro race are excluded. While there is, of course, a technical difference between the two situations, the difference is not enough to conclude that in one there is no state action while in the other there is. If each member of the plaintiff Association lined up individually at the pro shop, one behind the other, on a given day, and then individually paid his fee to play golf, there is no doubt but that none of them could be denied the right to use the golf course, one behind the other, or in successive foursomes, or in any other manner approved by the golf course regulations. If they did this, there would certainly be no prohibition against the plaintiff Golf Association declaring that the play of these members is to be considered a tournament sponsored by the Association. The individual members simply could not be denied the right to so use the public golf course simply because they are members of an association with a restrictive membership clause.

The only difference between this procedure and what the plaintiff seeks to do is that instead of each member presenting himself individually at the pro shop to get his tee-off time and pay his fee, a representative of the plaintiff Association intends to go to the pro shop, pay the fees for each of its participating members, and get their tee-off times all at one time. This difference in procedure is certainly not enough to make the first permissible and the second impermissible. If the first procedure does not involve prohibited state action, neither does the second. The procedure used in the second instance does not grant exclusive use of the public facility to the plaintiff Golf Association any more than does the first procedure. In neither case is the golf course closed to use by others wishing to use it. The defendant Commission is not furnishing anything but the normal use of the golf course to citizens who happen to belong to the plaintiff Golf Association. They are not furnishing materials, manpower, supervision, or anything else that they do not usually furnish to any and all citizens who pay their fees and play golf on the public course. The members of the plaintiff Association cannot be denied the same privilege.

For these reasons, there will be judgment entered herein granting the relief sought by the plaintiff and permanently enjoining the defendants, their agents, representatives, employees, or anyone acting in concert with them, from in any way denying to the plaintiff's membership, individually or as a group, the right to use and enjoy the public, or municipal golf courses owned, operated, controlled, or supervised by the defendant, the Recreation and Park Commission for the Parish of East Baton Rouge, Louisiana, in the same manner and under the same conditions as any other person or group is permitted to use and enjoy those facilities.